**GLANCY BINKOW & GOLDBERG LLP**
LIONEL Z. GLANCY (#134180)
MICHAEL GOLDBERG (#188669)
ROBERT V. PRONGAY (#270796)
CASEY E. SADLER (#274241)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: lglancy@glancylaw.com
        mmgoldberg@glancylaw.com
        rprongay@glancylaw.com
        csadler@glancylaw.com

*Attorneys for Plaintiff Adam Zhamukhanov*
[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM ZHAMUKHANOV, Individually and on Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>            v.<br><br>ACELRX PHARMACEUTICALS, INC., RICHARD A. KING, TIMOTHY E. MORRIS, and JAMES H. WELCH,<br><br>                                    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Adam Zhamukhanov ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by ACELRX PHARMACEUTICALS, INC. ("AcelRx" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by AcelRx; and (c) review of other publicly available information concerning AcelRx.

## **NATURE OF THE ACTION AND OVERVIEW**

1.     This is a class action on behalf of those who purchased or otherwise acquired AcelRx's common stock and/or call options, or sold/wrote AcelRx's put options between December 2, 2013 and September 25, 2014 inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     AcelRx is a specialty pharmaceutical company focused on the development and commercialization of innovative therapies for the treatment of acute and breakthrough pain. The Company plans to commercialize its product candidates in the United States and license the development and commercialization rights to its product candidates for sale outside of the United States through strategic partnerships and collaborations.

3.     On December 2, 2013, the Company announced that the U.S. Food and Drug Administration ("FDA") had accepted the Company's new drug application ("NDA") for Zalviso (sufentanil sublingual tablet system), formerly known as ARX-01. The Company's proposed indication for Zalviso is for the management of moderate-to-severe acute pain in adult patients in

CLASS ACTION COMPLAINT
1

the hospital setting.  Zalviso consists of sufentanil tablets delivered by the Zalviso System, a needle-free, handheld, patient-administered, pain management system (collectively, "Zalviso").

4.     On July 25, 2014, after the market closed, AcelRx announced that it had received a Complete Response Letter ("CRL") from FDA regarding its NDA for Zalviso.  According to the Company, the FDA requested  additional information on the Zalviso System to ensure proper use of the device, including the provision of bench data demonstrating a reduction in the incidence of optical system errors which require premature drug cartridge change, changes to the Instructions for Use for the device, and additional data to support the shelf life of the product.  The Company stated that there was no guarantee that the information previously provided to the FDA was adequate to address the issues in the CRL, and that more bench testing and possibly human factors testing was required to address certain items in the CRL. Additionally, Defendants stated that they believed the Company could satisfy all of the FDA's requests in the CRL and resubmit the NDA by the end of 2014.

5.     On this news, shares of AcelRx declined $4.44 per share, nearly 41%, to close on July 28, 2014, at $6.39 per share, on unusually heavy volume.

6.     On September 26, 2014, AcelRx revealed that the resubmission process for its Zalviso NDA would not be complete until the first quarter of 2015 at the earliest.  According to the Company, the FDA also communicated that the planned resubmission will qualify as a Class 2 resubmission with a review period of six months.

7.     On this news, shares of AcelRx declined $1.31 per share, over 19%, to close on September 26, 2014, at $5.41 per share, on unusually heavy volume.

8.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business,

operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Instructions for Use (IFU) for Zalviso were not designed to adequately address the risk of the inadvertent misplacement of tablets; (2) that the Company had not submitted to the FDA sufficient data to support the shelf life of the product; and (3) that, as a result of the foregoing, Defendants' statements about Zalviso, including the drug's regulatory approval and financial prospects, were materially false and misleading at all relevant times and/or lacked a reasonable basis.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  Additionally, AcelRx's principal executive offices are located within this Judicial District.

CLASS ACTION COMPLAINT

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

14.     Plaintiff Adam Zhamukhanov, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired AcelRx's securities, including call options during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant AcelRx is a Delaware corporation with its principal executive offices located at 351 Galveston Drive, Redwood City, California 94063.

16.     Defendant Richard A. King ("King") was, at all relevant times, Chief Executive Officer ("CEO") and a director of AcelRx.

17.     Defendant Timothy E. Morris ("Morris") was, at all relevant times, Chief Financial Officer ("CFO") of AcelRx since March 25, 2014.

18.     Defendant James H. Welch ("Welch") was, at all relevant times, CFO of AcelRx until March 24, 2014.

19.     Defendants King, Morris, and Welch are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of AcelRx's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after,

1  their issuance and had the ability and opportunity to prevent their issuance or cause them to be

2  corrected.  Because of their positions and access to material non-public information available to

3  them, each of these defendants knew that the adverse facts specified herein had not been

4  disclosed to, and were being concealed from, the public, and that the positive representations

5
6  which were being made were then materially false and/or misleading.   The Individual

7  Defendants are liable for the false statements pleaded herein, as those statements were each

8  "group-published" information, the result of the collective actions of the Individual Defendants.

9                                        **SUBSTANTIVE ALLEGATIONS**

10                                                **Background**

11
12         20.     AcelRx is a specialty pharmaceutical company focused on the development and

13  commercialization of innovative therapies for the treatment of acute and breakthrough pain.  The

14  Company plans to commercialize its product candidates in the United States and license the

15  development and commercialization rights to its product candidates for sale outside of the United

16  States through strategic partnerships and collaborations.

17                                **Materially False and Misleading**
18                           **Statements Issued During the Class Period**

19         21.     The Class Period begins on December 2, 2013.  On this day, AcelRx issued a

20  press release entitled, "Zalviso™ New Drug Application Accepted for Filing by FDA."  Therein,

21  the Company, in relevant part, stated:

22

23         AcelRx Pharmaceuticals, Inc. (Nasdaq: ACRX), a specialty pharmaceutical
           company focused on the development and commercialization of innovative
24         therapies for the treatment of acute and breakthrough pain, today announced that
           the Zalviso™ New Drug Application (NDA) was accepted for filing by the FDA
25         on November 26, 2013. The acceptance for filing of the NDA indicates the FDA
           has determined that the application is sufficiently complete to permit a substantive
26         review.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"We are extremely pleased with the filing of our NDA for Zalviso, representing achievement of another critical milestone for AcelRx," stated Richard King, president and CEO of AcelRx. "Zalviso, if approved, will provide hospitalized patients with a non-programmable, non-invasive, patient-controlled treatment option for the management of moderate-to-severe acute pain with a rapid onset of pain relief compared to the commonly used, intravenous patient controlled analgesia systems that typically utilize morphine."

The NDA, submitted on September 27, 2013, seeks approval for the marketing and sale of Zalviso for the management of moderate-to-severe acute pain in adult patients in the hospital setting. The NDA submission is based primarily on data from a Phase 3 registration program that included two double-blind randomized placebo-controlled clinical trials, one conducted in patients following major abdominal surgery, the other in patients following major joint replacement surgery.   Additionally, a Phase 3 open-label active-comparator trial was conducted in patients following either major abdominal or orthopedic surgery, comparing Zalviso to the current standard of care, intravenous patient-controlled analgesia (IV PCA) with morphine.  Zalviso successfully achieved the primary efficacy endpoints for each of these studies.  Treatment-emergent adverse events were typical of opioid usage post-operatively, were generally mild-to-moderate in nature, and were similar in both active- and placebo-treatment groups for the majority of adverse events.

22.     On December 16, 2013, AcelRx issued a press release entitled, "AcelRx and Grunenthal Announce Collaboration for EU Commercialization of ZALVISO™."  Therein, the Company, in relevant part, stated:

**ZALVISO PDUFA Date**

In addition, AcelRx announced today that the U.S. Food and Drug Administration (FDA) has established a Prescription Drug User Fee Act (PDUFA) action date of July 27, 2014, for AcelRx's New Drug Application (NDA) for Zalviso.  AcelRx announced on December 2, 2013 that FDA accepted for filing the Zalviso NDA.

23.     On March 3, 2014, AcelRx issued a press release entitled, "AcelRx Pharmaceuticals Reports Fourth Quarter and Full Year 2013 Financial Results."  Therein, the Company, in relevant part, stated:

AcelRx Pharmaceuticals, Inc. (Nasdaq: ACRX), a specialty pharmaceutical company focused on the development and commercialization of innovative therapies for the treatment of acute and breakthrough pain, today reported financial results for the three and twelve months ended December 31, 2013.

CLASS ACTION COMPLAINT

"AcelRx made strong progress in 2013 with the successful completion of the Zalviso™ (sufentanil sublingual NanoTab system) Phase 3 program, the filing and acceptance of the NDA for Zalviso, the execution of a commercial partnership agreement with Grunenthal for Zalviso that covers Europe and Australia, and agreement with FDA on a Phase 3 program for ARX-04, an investigational single-dose sublingual sufentanil NanoTab for moderate-to-severe acute pain," stated Richard King, president and CEO of AcelRx.  "As we begin 2014, we are advancing our U.S. commercial capability and preparing for a potential Zalviso approval in third quarter of 2014. We are also readying Zalviso for MAA filing in Europe, and preparing to initiate a Phase 3 clinical program for ARX-04 in the second half of this year."

*        *        *

**Review of Recent Accomplishments and Corporate Update**

- The Zalviso New Drug Application (NDA) was accepted for filing by the FDA on November 26, 2013. The acceptance indicates the FDA has determined that the application is sufficiently complete to permit a substantive review and the FDA has subsequently confirmed a PDUFA action date of July 27, 2014. The NDA seeks approval of Zalviso for the management of moderate-to-severe acute pain in adult patients in the hospital setting.

24.    On March 17, 2014, AcelRx filed its Annual Report with the SEC on Form 10-K for the 2013 fiscal year.  The Company's Form 10-K was signed by Defendants King and Welch, and reaffirmed the Company's statements previously announced on March 3, 2014.  Therein, the Company, in relevant part, stated:

Our Phase 3 program for Zalviso consisted of three Phase 3 clinical trials. We have reported positive top-line results from each of the three clinical trials. Prior to our Phase 3 program, we completed three successful Phase 2 clinical trials of sufentanil NanoTabs in the post-operative setting. These Phase 2 clinical trials demonstrated analgesic efficacy over a 12-hour study period, a low adverse event profile and excellent device functionality. During our End of Phase 2 meeting with the FDA, the FDA stated that the demonstration of efficacy versus placebo in two Phase 3 clinical trials with a total safety database of at least 600 patients exposed to the active drug should suffice to support a new drug application, or NDA. We have designed our Phase 3 clinical trials based on the feedback from the FDA.

CLASS ACTION COMPLAINT

7

*     *     *

Based on the successful results of our Phase 3 clinical program for Zalviso, we submitted a New Drug Application, or NDA, for Zalviso in September 2013 and, in December 2013, we announced that the U.S Food and Drug Administration, or FDA, accepted for filing the Zalviso NDA. In addition, the FDA has established a Prescription Drug User Fee Act, or PDUFA, action date of July 27, 2014 for AcelRx's Zalviso NDA. Assuming successful approval of our NDA on or around the PDUFA action date, we anticipate generating the first commercial sales of Zalviso in the United States in the first quarter of 2015.

The 505(b)(2) NDA submission for Zalviso is based on a development program that includes data from seven Phase 1 studies, three Phase 2 clinical trials, and three Phase 3 clinical trials. The Phase 3 trial program included two placebo-controlled efficacy and safety trials and one open-label active comparator trial, in which Zalviso was compared to IV PCA with morphine. Zalviso successfully achieved the primary efficacy endpoints for each of these trials. A summary of the Phase 3 trials and results is as follows:

- *Active comparator trial (IAP 309)*—in November 2012, we reported top-line data demonstrating that Zalviso met its primary endpoint of non-inferiority in a Phase 3 open-label active comparator trial designed to compare the efficacy and safety of Zalviso (15 mcg/dose, 20 minute lock-out) to IV PCA with morphine (1mg/dose, 6 minute lock-out) for the treatment of moderate-to-severe acute post-operative pain immediately following major abdominal or orthopedic surgery.

- *Double-blind, placebo-controlled, abdominal surgery trial (IAP 310)*—in March 2013, we reported top-line data demonstrating that Zalviso met its primary endpoint in a pivotal Phase 3 trial designed to compare the efficacy and safety of Zalviso to placebo in the management of acute post-operative pain after major open abdominal surgery. Adverse events reported in the trial were generally mild or moderate in nature and similar in both placebo and treatment groups. Utilizing a randomized, double-blind, placebo-controlled design, this pivotal Phase 3 trial enrolled 178 adult patients at 13 U.S. sites.

- *Double-blind, placebo-controlled, orthopedic surgery trial (IAP 311)*—in May 2013, we reported top-line data demonstrating that Zalviso met its primary endpoint in a pivotal Phase 3 trial designed to compare the efficacy and safety of Zalviso to placebo in the management of acute post-operative pain after major orthopedic surgery. Utilizing a randomized, double-blind, placebo-controlled design, this pivotal Phase 3 trial enrolled 426 adult patients at 34 U.S. sites. Treatment-emergent adverse events were generally mild to moderate in nature and similar for the majority of adverse events between Zalviso and placebo-treated patients, despite the

CLASS ACTION COMPLAINT
8

shorter duration of exposure in the placebo-treated patients caused by early termination due to inadequate analgesia.

As noted above, assuming successful approval of our NDA on or about the PDUFA action date, we anticipate launching the commercial sale of Zalviso in the United States in the first quarter of 2015.

25. On May 8, 2014, AcelRx issued a press release entitled, "AcelRx Pharmaceuticals Reports First Quarter 2014 Financial Results." Therein, the Company, in relevant part, stated:

AcelRx Pharmaceuticals, Inc. (Nasdaq: ACRX), a specialty pharmaceutical company focused on the development and commercialization of innovative therapies for the treatment of acute and breakthrough pain, today reported financial results for the three months ended March 31, 2014.

"In the first quarter of the year, we have focused on preparation for commercialization of Zalviso both in the U.S. and Europe. This includes working with the FDA on the Zalviso NDA ahead of the July 27, 2014 PDUFA action date, building our commercial capabilities in anticipation of approval of Zalviso in the U.S., and working with our European commercial partner Grunenthal to prepare the MAA, including meeting with the EU regulatory authorities ahead of the anticipated MAA filing in the middle of this year," stated Richard King, president and CEO of AcelRx. "Our principal pre-commercial activities year to date in the U.S. consist of raising awareness of Zalviso through medical meeting attendance and data presentation, completion of market sizing and segmentation work leading to sales force sizing and territory definition, and adding personnel with commercial experience. We look forward to the continuation of these efforts. In addition, we have initiated activities to allow us to advance ARX-04 into Phase 3 trials later this year."

                                *        *        *

General and administrative expenses were $3.9 million for the first quarter of 2014, compared with $2.2 million for the first quarter of 2013. The increase was primarily due to market research and other pre-commercial activities in preparation for potential marketing approval of Zalviso in the third quarter of this year.

26. On May 8, 2014, AcelRx filed its Quarterly Report with the SEC on Form 10-Q for the 2014 fiscal first quarter. The Company's Form 10-Q was signed by Defendant Morris, and reaffirmed the Company's statements previously announced that day.

27. On July 24, 2014, AcelRx issued a press release entitled, "AcelRx Pharmaceuticals Confirms July 27, 2014 PDUFA Date for Zalviso." Therein, the Company, in relevant part, stated:

> AcelRx Pharmaceuticals, Inc. (Nasdaq: ACRX), a specialty pharmaceutical company focused on the development and commercialization of innovative therapies for the treatment of acute and breakthrough pain, today confirmed the PDUFA date for Zalviso remains July 27, 2014.
>
> The company recently learned that a rumor circulated online stating the Food and Drug Administration (FDA) had approved Zalviso. As of July 24, 2014 there has been no notification to the company from the FDA regarding the status of the Zalviso New Drug Application (NDA).

28. On July 25, 2014, AcelRx issued a press release entitled, "AcelRx Pharmaceuticals Receives Complete Response Letter from FDA for New Drug Application for Zalviso™." Therein, the Company, in relevant part, stated:

> AcelRx Pharmaceuticals, Inc. (Nasdaq: ACRX), a specialty pharmaceutical company focused on the development and commercialization of innovative therapies for the treatment of acute and breakthrough pain, today announced that the U.S. Food and Drug Administration (FDA) has issued a Complete Response Letter (CRL) for the Company's new drug application (NDA) for Zalviso™ (sufentanil sublingual tablet system). The Company is currently reviewing the FDA's comments and requests contained in the CRL and plans to discuss these requests with the FDA.
>
> The CRL contains requests for additional information on the Zalviso System to ensure proper use of the device. The requests include provision of bench data demonstrating a reduction in the incidence of optical system errors which require premature drug cartridge change, changes to the Instructions for Use for the device, and additional data to support the shelf life of the product. We believe some of the requests have been addressed in amendments to the NDA that have been submitted prior to the receipt of the CRL but, as acknowledged by the FDA, have not been reviewed. There is no guarantee that the information previously provided to the FDA will be adequate to address the issues in the CRL. Additional bench testing will be required and human factors testing may be required to address certain items in the CRL. There were no requests to conduct additional human clinical studies.
>
> "We believe we can satisfy all of FDA's requests in the CRL and resubmit the NDA by the end of 2014, although we will have more clarity on the process and

timing after our conversation with FDA," said Richard King, president and CEO of AcelRx. "We are confident in the Zalviso development program and will work closely with the FDA to address the Agency's concerns as outlined in the CRL to ensure that healthcare professionals and patient communities will have access to Zalviso."

29.    On this news, shares of AcelRx declined $4.44 per share, nearly 41%, to close on July 28, 2014, at $6.39 per share, on unusually heavy volume.

30.    The statements contained in ¶¶21-28 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Instructions for Use (IFU) for Zalviso were not designed to adequately address the risk of the inadvertent misplacement of tablets; (2) that the Company had not submitted to the FDA sufficient data to support the shelf life of the product; and (3) that, as a result of the foregoing, Defendants' statements about Zalviso, including the drug's regulatory approval and financial prospects, were materially false and misleading at all relevant times and/or lacked a reasonable basis

31.    On August 11, 2014, AcelRx issued a press release entitled, "AcelRx Pharmaceuticals Reports Second Quarter 2014 Financial Results."   Therein, the Company, in relevant part, stated:

AcelRx Pharmaceuticals, Inc. (Nasdaq: ACRX), (AcelRx), a specialty pharmaceutical company focused on the development and commercialization of innovative therapies for the treatment of acute and breakthrough pain, today reported financial results for the three and six months ended June 30, 2014.  On July 25, 2014, AcelRx announced that the U.S. Food and Drug Administration (FDA) issued a Complete Response Letter (CRL) for the Company's new drug application (NDA) for Zalviso™, (sufentanil sublingual tablet system).  Since the receipt of the CRL, AcelRx has been working on a reply and intends to meet with the FDA to discuss the items contained in the CRL.

"We were disappointed with the receipt of a Complete Response Letter for Zalviso and we look forward to meeting with the FDA to clarify the items included in the CRL and to discuss our planned response," stated Richard King, president and CEO of AcelRx. "We have spoken to the FDA and plan to meet

with them by the end of September 2014. ***We anticipate we can refile the Zalviso NDA before the end of 2014, pending the outcome of the meeting with the FDA.*** We remain confident in the Zalviso development program and will work closely with the FDA to address the Agency's concerns as outlined in the CRL to ensure that healthcare professionals and patient communities will have access to Zalviso."

The CRL contains requests for additional information on the Zalviso System to ensure proper use of the device.  The requests include submission of data demonstrating a reduction in the incidence of optical system errors, changes to the Instructions for Use for the device to address inadvertent dosing, among other items, and submission of additional data to support the shelf life of the product. We believe certain of these requests have been addressed in amendments to the NDA that were submitted prior to the receipt of the CRL but, as acknowledged by the FDA, have not yet been reviewed by the Agency.  While we anticipate that additional bench testing and human factors testing may be required to address certain items in the CRL, there were no requests to conduct additional human clinical studies. However, there is no guarantee that the information previously provided or to be provided to the FDA will be adequate to address the issues raised in the CRL.

**Second Quarter Financial Results**

*          *          *

Research and development expenses for the quarter ended June 30, 2014 were $7.3 million, compared with $6.1 million for the quarter ended June 30, 2013. The increase was primarily due to continued development work to support the FDA's review of the Zalviso NDA.

General and administrative expenses were $5.0 million for the second quarter of 2014, compared with $2.1 million for the second quarter of 2013.  The increase was primarily due to market research and other pre-commercial activities in support of potential marketing approval of Zalviso.

*          *          *

**Year-to-Date Financial Results**

*          *          *

Research and development expenses for the six months ended June 30, 2014 were $12.0 million, compared to $15.4 million for the six months ended June 30, 2013. The decrease over the six months ended June 30, 2014, was primarily due to a high level of activity associated with Phase 3 clinical studies of Zalviso in the first half of 2013.  General and administrative expenses were $9.0 million for the six

months of 2014, compared with $4.3 million for the six months ended June 30, 2013. The increase was primarily due to market research and other pre-commercial activities in anticipation of marketing approval of Zalviso.

(Emphasis added).

32. On August 11, 2014, AcelRx filed its Quarterly Report with the SEC on Form 10-Q for the 2014 fiscal second quarter. The Company's Form 10-Q was signed by Defendant Morris and reaffirmed the Company's statements previously announced that day. Therein, the Company, in relevant part, stated:

On July 25, 2014, the FDA issued a CRL for the Company's NDA for Zalviso. Since the receipt of the CRL, the Company has been working on a reply and intends to meet with the FDA to discuss the items contained in the CRL.

The CRL contains requests for additional information on the Zalviso System to ensure proper use of the device. The requests include submission of data demonstrating a reduction in the incidence of optical system errors, changes to the Instructions for Use for the device to address inadvertent dosing, among other items, and submission of additional data to support the shelf life of the product. The Company believes certain of the requests were addressed in amendments to the NDA that have been submitted prior to the receipt of the CRL but, as acknowledged by the FDA, have not yet been reviewed by the FDA. While the Company anticipates that additional bench testing and human factors testing may be required to address certain items in the CRL, there were no requests to conduct additional human clinical studies. The Company believes it can satisfy all of the FDA's requests contained in the CRL and resubmit the NDA by the end of 2014, although it will have more clarity on the process and timing after its discussion with FDA. However, there is no guarantee that the information previously provided, or to be provided, to the FDA will be adequate to address the issues in the CRL.

33. The statements contained in ¶¶31-32 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the Instructions for Use (IFU) for Zalviso were not designed to adequately address the risk of the inadvertent misplacement of tablets; (2) that the Company had not submitted to the FDA sufficient data to support the shelf life of the product; and (3) that, as a result of the foregoing, Defendants' statements about Zalviso, including the drug's regulatory approval and financial

prospects, were materially false and misleading at all relevant times and/or lacked a reasonable basis.

**<u>Disclosures at the End of the Class Period</u>**

34.     On September 26, 2014, AcelRx issued a press release entitled, "AcelRx Pharmaceuticals Provides Regulatory Update on Zalviso™."  Therein, the Company, in relevant part, stated:

> AcelRx Pharmaceuticals, Inc. (Nasdaq: ACRX), a specialty pharmaceutical company focused on the development and commercialization of innovative therapies for the treatment of acute and breakthrough pain, today provided an update on the plans for the resubmission of the Company's New Drug Application (NDA) for Zalviso™ (sufentanil sublingual tablet system).   The Company recently held a teleconference with representatives from the Food and Drug Administration (FDA) to review the Company's proposed response to the Zalviso Complete Response Letter (CRL) received on July 25, 2014.  The Company had submitted a Briefing Document to the FDA ahead of the teleconference and received preliminary comments from the FDA on the Briefing Document.  Based on the communications with the FDA, subject to the timing of the FDA review and comment on protocols to be submitted for the bench testing and Human Factors Study, the Company is targeting resubmission of the Zalviso NDA in the first quarter of 2015. However, depending on feedback from the FDA, the timing of the filing of the NDA could be later than the first quarter of 2015.  The FDA also communicated that the planned resubmission will qualify as a Class 2 resubmission with a review period of six months.

> During the teleconference with the FDA, the Company discussed the items included in the CRL, specifically: testing of the proposed mitigations to reduce the incidence of optical system errors, changes to the Instructions for Use (IFU) for the Zalviso System to address risk of inadvertent misplacement of tablets, and submission of additional data to support the shelf life of the product.

> As a result of the communications, the Company confirmed that bench testing would be an acceptable approach to evaluate the reduction in optical system errors.  The protocol for the bench testing will be submitted to the FDA for review and comment.

> To address the risk of inadvertent misplacement of tablets, the Company proposed mitigations through the Zalviso System and IFU and to test these mitigations by way of a Human Factors Study.  The protocol for the Human Factors Study will be submitted to the FDA for review and comment. The FDA stated that the

CLASS ACTION COMPLAINT
14

1

adequacy of the Human Factors Study and the results of the study will be subject
to final review and approval by the FDA.

2

3

Lastly, the Company proposed including additional stability data in the
resubmission to support the proposed 24 month shelf life of the Zalviso System.
The FDA has agreed with this approach subject to review of the data previously
submitted and to be submitted.

4

5

6

"The discussion with the FDA was productive," said Richard King, president and
CEO of AcelRx.  "Over the coming months we will prepare, submit and finalize
with the FDA the protocols required to complete this work.  Assuming timely
review by the FDA on the protocols, we anticipate being able to complete the
work with a target to refile the Zalviso NDA in the first quarter of 2015.
However, depending on feedback from the FDA, the timing of the filing of the
NDA could be later than the first quarter of 2015."

7

8

9

10

The Company awaits receipt of the teleconference meeting minutes from the FDA
to confirm the target timelines discussed above.

11

12

35.    On this news, shares of AcelRx declined $1.31 per share, over 19%, to close on

13

September 26, 2014, at $5.41 per share, on unusually heavy volume.

14

**CLASS ACTION ALLEGATIONS**

15

16

36.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

17

Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased or

18

otherwise acquired AcelRx's common stock and/or call options, or sold/wrote AcelRx's put

19

options between December 2, 2013 and September 25, 2014, inclusive and who were damaged

20

thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the

21

Company, at all relevant times, members of their immediate families and their legal

22

23

representatives, heirs, successors or assigns and any entity in which Defendants have or had a

24

controlling interest.

25

37.    The members of the Class are so numerous that joinder of all members is

26

impracticable.  Throughout the Class Period, AcelRx's securities were actively traded on the

27

28

NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and

1  can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds

2  or thousands of members in the proposed Class. Millions of AcelRx shares were traded publicly

3  during the Class Period on the NASDAQ. As of July 21, 2014, AcelRx had 43,377,078 shares of

4  common stock outstanding. Record owners and other members of the Class may be identified

5  from records maintained by AcelRx or its transfer agent and may be notified of the pendency of

6

7  this action by mail, using the form of notice similar to that customarily used in securities class

8  actions.

9     38.    Plaintiff's claims are typical of the claims of the members of the Class as all

10  members of the Class are similarly affected by Defendants' wrongful conduct in violation of

11  federal law that is complained of herein.

12

13     39.    Plaintiff will fairly and adequately protect the interests of the members of the

14  Class and has retained counsel competent and experienced in class and securities litigation.

15     40.    Common questions of law and fact exist as to all members of the Class and

16  predominate over any questions solely affecting individual members of the Class. Among the

17  questions of law and fact common to the Class are:

18

19          (a)    whether the federal securities laws were violated by Defendants' acts as

20  alleged herein;

21          (b)    whether statements made by Defendants to the investing public during the

22  Class Period omitted and/or misrepresented material facts about the business, operations, and

23  prospects of AcelRx; and

24

25          (c)    to what extent the members of the Class have sustained damages and the

26  proper measure of damages.

27

28

292737.1 ACELRX

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.   There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

42.     The market for AcelRx's securities was open, well-developed and efficient at all relevant times.   As a result of these materially false and/or misleading statements, and/or failures to disclose, AcelRx's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired AcelRx's securities relying upon the integrity of the market price of the Company's securities and market information relating to AcelRx, and have been damaged thereby.

43.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of AcelRx's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.   Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about AcelRx's business, operations, and prospects as alleged herein.

44.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.   As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or

misleading statements about AcelRx's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

45.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

46.     During the Class Period, Plaintiff and the Class purchased AcelRx's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

47.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding AcelRx, his/her control over, and/or

1
2
3

receipt and/or modification of AcelRx's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning AcelRx, participated in the fraudulent scheme alleged herein.

4
5

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

6
7
8
9
10
11
12
13

48.     The market for AcelRx's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, AcelRx's securities traded at artificially inflated prices during the Class Period.   On March 5, 2014, the Company's stock closed at a Class Period high of $13.03 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of AcelRx's securities and market information relating to AcelRx, and have been damaged thereby.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

49.     During the Class Period, the artificial inflation of AcelRx's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about AcelRx's business, prospects, and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of AcelRx and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

CLASS ACTION COMPLAINT

50.     At all relevant times, the market for AcelRx's securities was an efficient market for the following reasons, among others:

(a)     AcelRx stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     as a regulated issuer, AcelRx filed periodic public reports with the SEC and/or the NASDAQ;

(c)     AcelRx regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     AcelRx was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

51.     As a result of the foregoing, the market for AcelRx's securities promptly digested current information regarding AcelRx from all publicly available sources and reflected such information in AcelRx's stock price. Under these circumstances, all purchasers of AcelRx's securities during the Class Period suffered similar injury through their purchase of AcelRx's securities at artificially inflated prices and a presumption of reliance applies.

**NO SAFE HARBOR**

52.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of AcelRx who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

53. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase AcelRx's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

55. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for AcelRx's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

56.   Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about AcelRx's financial well-being and prospects, as specified herein.

57.   These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of AcelRx's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about AcelRx and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

58.   Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their

292737.1 ACELRX

responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

59. The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing AcelRx's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

60. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of AcelRx's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or

indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired AcelRx's securities during the Class Period at artificially high prices and were damaged thereby.

61. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that AcelRx was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their AcelRx securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

62. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

64. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65. The Individual Defendants acted as controlling persons of AcelRx within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level

positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

67.    As set forth above, AcelRx and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

CLASS ACTION COMPLAINT
292737.1 ACELRX

(a)     determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  October 1, 2014                    **GLANCY BINKOW & GOLDBERG LLP**

By: *s/ Robert V. Prongay*
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
Casey E. Sadler
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email: lglancy@glancylaw.com
        mmgoldberg@glancylaw.com
        rprongay@glancylaw.com
        csadler@glancylaw.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Adam Zhamukhanov*

CLASS ACTION COMPLAINT

292737.1 ACELRX

GLANCY BINKOW & GOLDBERG LLP

**SWORN CERTIFICATION OF PLAINTIFF**
**ACELRX PHARMACEUTICALS, INC. SECURITIES LITIGATION**

I, ___Adam Zhamukhanov___ , certify that:
　　　　　[Please Print Your Name]

1.　　I have reviewed the Complaint and authorized its filing.

2.　　I did not purchase AcelRx Pharmaceuticals, Inc., the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3.　　I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.　　My transactions in AcelRx Pharmaceuticals, Inc. are listed on the attached exhibit during the Class Period.

5.　　I have not served as a representative party on behalf of a class under federal securities laws during the last three years.

6.　　I will not accept any payment for serving as a representative party, except to receive my pro-rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: 9/29/14 　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　[Please Sign Your Name Above]

|  |  |  | Adam Zhamukhanov's Transactions in AcelRx Pharmaceuticals |  |  |
|---|---|---|---|---|---|
| Date | Transaction | Type | Description | Qty | Price |
| 3/11/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 15 | $3.50 |
| 3/11/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 7 | $3.20 |
| 3/11/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 10 | $3.30 |
| 3/25/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 10 | $3.40 |
| 3/27/2014 | Purchase | CALL | ACRX1421F10 | 15 | $2.80 |
| 3/27/2014 | Purchase | CALL | ACRX1421F10 | 10 | $2.65 |
| 3/27/2014 | Purchase | CALL | ACRX1421F10 | 4 | $2.55 |
| 3/28/2014 | Sale | CALL | ACRX1421F10 | -29 | $2.85 |
| 3/31/2014 | Purchase | CALL | ACRX1419D10 | 4 | 1.85 |
| 3/31/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 10 | $3.20 |
| 3/31/2014 | Purchase | CALL | ACRX1421F10 | 10 | $2.60 |
| 4/1/2014 | Sale | CALL | ACRX1419D10 | -4 | 2.1 |
| 4/1/2014 | Sale | CALL | ACRX1421F10 | -10 | $2.75 |
| 4/4/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 9 | $3.20 |
| 4/4/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 10 | $3.10 |
| 4/4/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 10 | $3.00 |
| 4/4/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 10 | $2.95 |
| 4/4/2014 | Purchase | CALL | ACRX1421F10 | 13 | $2.25 |
| 4/4/2014 | Purchase | CALL | ACRX1421F10 | 13 | $2.05 |
| 4/7/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 8 | $2.60 |
| 4/10/2014 | Sale | CALL | ACRX1421F10 | -26 | $1.90 |
| 4/15/2014 | Purchase | CALL | ACRX1421F10 | 15 | $1.55 |
| 4/15/2014 | Purchase | CALL | ACRX1421F10 | 15 | $1.45 |
| 4/16/2014 | Purchase | CALL | ACRX1421F10 | 15 | $1.30 |
| 4/16/2014 | Purchase | CALL | ACRX1421F10 | 11 | $1.15 |
| 4/21/2014 | Sale | CALL | ACRX1421F10 | -26 | $1.55 |
| 4/22/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 10 | $2.65 |
| 4/23/2014 | Sale | CALL | ACRX1421F10 | -30 | $2.00 |
| 4/28/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 3 | $2.50 |
| 4/28/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 8 | $2.35 |
| 4/28/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 9 | $2.35 |
| 4/28/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 10 | $2.35 |
| 5/16/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 5 | $1.35 |
| 5/23/2014 | Sale | CALL | ACRX1420I12.5 EXP 9-20-2014 | -5 | $1.70 |
| 5/23/2014 | Sale | CALL | ACRX1420I12.5 EXP 9-20-2014 | -10 | $1.65 |
| 5/23/2014 | Sale | CALL | ACRX1420I12.5 EXP 9-20-2014 | -10 | $1.60 |
| 5/27/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 10 | $1.40 |
| 5/30/2014 | Sale | CALL | ACRX1420I12.5 EXP 9-20-2014 | -3 | $1.60 |
| 6/2/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 9 | $1.40 |
| 6/2/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 10 | $1.40 |
| 6/2/2014 | Trade Correction | CALL | ACRX1420I12.5 EXP 9-20-2014 | -10 | $1.40 |
| 6/2/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 10 | $1.35 |
| 6/2/2014 | Trade Correction | CALL | ACRX1420I12.5 EXP 9-20-2014 | -10 | $1.35 |

| | | | | | |
|---|---|---|---|---|---|
| Adam Zhamukhanov's Transactions in AcelRx Pharmaceuticals | | | | | |
| Date | Transaction | Type | Description | Qty | Price |
| 6/4/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 4 | $1.25 |
| 6/4/2014 | Sale | CALL | ACRX1420I12.5 EXP 9-20-2014 | -4 | $1.30 |
| 6/9/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 5 | $1.15 |
| 6/9/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 6 | $1.15 |
| 6/16/2014 | Sale | CALL | ACRX1420I12.5 EXP 9-20-2014 | -10 | $1.35 |
| 6/17/2014 | Sale | CALL | ACRX1420I12.5 EXP 9-20-2014 | -10 | $1.55 |
| 6/18/2014 | Sale | CALL | ACRX1420I12.5 EXP 9-20-2014 | -10 | $1.90 |
| 6/18/2014 | Sale | CALL | ACRX1420I12.5 EXP 9-20-2014 | -6 | $1.90 |
| 6/20/2014 | Sale | CALL | ACRX1420I12.5 EXP 9-20-2014 | -10 | $1.95 |
| 6/26/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 10 | $1.50 |
| 7/3/2014 | Sale | CALL | ACRX1420I12.5 EXP 9-20-2014 | -5 | $1.90 |
| 7/9/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 6 | $1.65 |
| 7/9/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 3 | $1.55 |
| 7/17/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 18 | $1.10 |
| 7/18/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 2 | $0.90 |
| 7/18/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 10 | $0.90 |
| 7/18/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 10 | $0.90 |
| 7/21/2014 | Sale | CALL | ACRX1420I12.5 EXP 9-20-2014 | -10 | $1.20 |
| 7/23/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 6 | $1.15 |
| 7/23/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 6 | $1.15 |
| 7/25/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 11 | 0.95 |
| 7/25/2014 | Purchase | CALL | ACRX1420I12.5 EXP 9-20-2014 | 10 | 1.05 |
| 9/22/2014 | Option Expired | CALL | ACRX1420I12.5 EXP 9-20-2014 | -177 | 0 |